IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BELINDA KAY PENCE, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | 1:20-CV-88-RP |
| § | |
| PERMIAN HIGHWAY PIPELINE, § | |
| LLC, et al., § | |
| § | |
| Defendants. § | |

**ORDER**

Before the Court is Defendants Permian Highway Pipeline, LLC ("PHP"), Kinder Morgan Texas Pipeline, LLC ("KMTP"), and Kinder Morgan, Inc.'s ("Kinder Morgan," and collectively "Defendants") Motion to Dismiss Plaintiffs Belinda Kay Pence, Rosalind Lee, Stan Parker, Andrew Sansom, and Mark Weiler's (together "Plaintiffs") amended complaint, (Am. Compl., Dkt. 37). (Mot. Dismiss, Dkt. 38). Plaintiffs filed a response, and Defendants replied. (Dkts. 40, 41). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted under Rule 12(b)(1).

**I. BACKGROUND**

This case arises out of Defendants' construction of a natural gas pipeline ("Pipeline") crossing sixteen Texas counties, including Gillespie and Blanco Counties, where Plaintiffs own interests in property. (Am. Compl., Dkt. 37, at 1; Mot. Dismiss, Dkt. 38, at 9). Plaintiffs are five individuals with interests in property that were taken by eminent domain or are encumbered by an easement to allow for construction of the Pipeline. (Dkt. 37, at 3). Plaintiff Weiler claims that he sold PHP a permanent easement "while under threat of Defendants taking this permanent easement and right of way by eminent domain." (Dkt. 27, at 3). Defendants are the owners and operators of

1

the Pipeline—while PHP is the owner of the Pipeline, KMTP, a wholly owned subsidiary of Kinder Morgan, is charged with constructing and operating the Pipeline. (*Id.* at 3–4).

On August 10, 2018, PHP publicly announced that it was seeking bids from natural gas shipping for capacity on the Pipeline, which KMTP characterized as offering "intrastate and [Natural Gas Policy Act] NGPA Firm 311 Transportation Service." (Dkt. 27, at 7). On October 8, 2018, PHP submitted an application for a T-4 permit to the Texas Railroad Commission ("TRC") representing that the Pipeline would operate as a "Gas Utility" since it would transport gas owned by the operator and others for a fee. (*Id.* at 9). On October 22, 2018, the TRC issued a T-4 Permit authorizing PHP to operate the Pipeline, which it updated T-4 Permit on December 3, 2018. (*Id.* at 9–10). Defendants obtained a permit under Texas's T-4 permit process because, as the Pipeline is intrastate would offer an intrastate service, Defendants believed they were not subject to Federal Energy Regulatory Commission ("FERC") jurisdiction and did not need to obtain a certificate of public convenience and necessity ("Certificate") for the Pipeline as required under the Natural Gas Act ("NGA"). (Dkt. 37, at 8; Dkt. 38, at 11–13).

The crux of the parties' dispute centers around whether the Pipeline provides an intrastate or interstate service, which determines whether Defendants should have obtained a Certificate from the FERC before beginning construction. (Dkt. 37, at 20–27; Dkt. 38, at 12–13). It is undisputed that the Pipeline itself is entirely inside of Texas and does not cross a state line. (Dkt. 37, at 25; Dkt. 38, at 9). If the Pipeline provides a purely intrastate service, as Defendants contend, then Defendants properly sought only a T-4 permit from the TRC. (Dkt. 38, at 11, 13) ("[W]hile the NGA provides FERC with exclusive jurisdiction over pipelines engaged in interstate transportation, the NGA leaves regulation of 'intrastate transactions and pipelines' to the states.") (citing *Texas Pipeline Assoc. v. FERC*, 661 F.3d 258, 263 (5th Cir. 2011)).

Section 7 of the NGA forbids the construction or operation of any interstate gas pipeline without a Certificate issued by the FERC and limits the use of eminent domain to construct interstate pipelines to Certificate holders. 15 U.S.C. § 717f(c)(1)), 717f(h). Obtaining a Certificate involves being subject to the "FERC's rigorous, public, transparent, multi-year administrative process, and the mitigation conditions in its Certificate governing pipeline construction and operation, all of which are intended to provide landowners with extensive procedural and substantive protections for their health, safety and property." (Dkt. 37, at 25). As relevant to Plaintiffs, the FERC's certification process only allows natural gas pipeline companies to "take private property if they satisfy multiple criteria, including the FERC's determination . . . that the pipeline 'has made efforts to eliminate or minimize any adverse effects the project might have on . . . landowners and communities affected by the route of the new pipeline.'" (*Id.* at 12).

If, on the other hand, the Pipeline provides an interstate service by virtue of being supplied by and delivering natural gas to other interstate pipelines, the Pipeline is subject to the NGA and Defendants would have needed to obtain a Certificate from the FERC in order to construct the Pipeline. (Dkt. 37, at 25–28) ("Section 7(c)(1)(A) of the Natural Gas Act, 15 U.S.C. § 717f(c)(1)(A), prohibits the construction or operation of an interstate natural gas pipeline without a certificate of public convenience and necessity from the [FERC]."). Defendants contend that they are exempt from obtaining Certificate under Section 311 of the Natural Gas Policy Act ("NGPA"), which allows intrastate pipelines that transport gas on behalf of other pipelines that transport interstate gas without being subject to the FERC's jurisdiction under the NGA. (Dkt. 38, at 13–14) (citing 15 U.S.C. § 3371(a), 15 U.S.C. § 3431(a)(2)).

Plaintiffs initiated the instant action on January 24, 2020, seeking declaratory and injunctive relief for Defendants' alleged violations of NGA and 42 U.S.C. § 1983 for their failure to obtain a Certificate from the FERC because, as Plaintiffs argue, the Pipeline is in fact an interstate natural gas

pipeline subject to federal regulations. (Compl., Dkt. 1, at 22–23). In response to Defendants first motion to dismiss, (Dkt. 30), Plaintiffs amended their complaint to drop their claim brought under the NGA. (Am. Compl., Dkt. 37). The essence of Plaintiffs' remaining claim is that because Defendants did not obtain a Certificate from the FERC for the construction of the Pipeline, they "may not legally construct, operate, or take Plaintiffs' property for purposes of constructing or operating" the Pipeline. (Dkt. 37, at 2).

Defendants now once again move to dismiss Plaintiffs' amended complaint, arguing that it "merely seeks to disguise an improper NGA claim as a Section 1983 claim." (Dkt. 38, at 9). Defendants ask the Court to dismiss Plaintiffs' claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. (*Id.*).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in

4

the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### III. DISCUSSION

Defendants move to dismiss Plaintiffs' claim for lack of subject matter jurisdiction because the Court cannot award Plaintiffs' requested relief "without intruding on the regulatory scheme Congress created in the NGA," arguing that the FERC has exclusive jurisdiction over Plaintiffs' claim, including the threshold question of whether the Pipeline is subject to the NGA at all. (Dkt. 38, at 14). Plaintiffs respond that they have no mechanism to seek relief before the FERC, and even if they did, their "[section] 1983 claim would still not be displaced" and the "simple factual determination" of whether the Pipeline is properly considered intrastate or interstate "does not need FERC's expertise." (Dkt. 40, at 14–15).

In determining whether this Court has subject matter jurisdiction over Plaintiffs' claim, it must apply the two-step framework established in *Thunder Basin Coal Co. v. Reich* to determine whether Congress intended to allocate initial review to an administrative body, here the FERC. 510 U.S. 200, 207 (1994). Under *Thunder Basin*, this Court must first examine whether Congress's intent to preclude district court jurisdiction in favor of an administrative body is 'fairly discernible in the statutory scheme.'" *See id.* Second, the Court examines whether Plaintiffs' claim is "of the type Congress intended to be reviewed within this statutory structure." *Id.* at 212. Having reviewed the statute and Plaintiffs' claim, the Court finds that the NGA "contains a comprehensive scheme for administrative adjudication" of claims such as that brought by Plaintiffs claim that precludes this Court's exercise of jurisdiction. *Total Gas & Power N. Am., Inc. v. Fed. Energy Regul. Comm'n*, 2016 WL 3855865, at *22 (S.D. Tex. July 15, 2016), *aff'd*, 859 F.3d 325 (5th Cir. 2017), *as revised* (July 10, 2017), *and aff'd*, 859 F.3d 325 (5th Cir. 2017), *as revised* (July 10, 2017).

First, the Court evaluates "whether the NGA establishes a comprehensive scheme for administrative adjudication and judicial review that precludes this Court from exercising jurisdiction over this action." *Total Gas*, 2016 WL 3855865, at *7. Defendants argue that the NGA "provides a comprehensive scheme to process complaints, investigate potential violations, and assess penalties, with resort to the federal courts only in limited circumstances," citing to the various enforcement provisions in the NGA. (Dkt. 38, at 15–18) (citing to 15 U.S.C. § 717m–t). While Plaintiffs refer to Defendants "two-page detailed description of the NGA's administrative process for such complaints," they do not address or refute Defendants' assertions on this factor. (Dkt. 40, at 11).

The NGA's "extensive review framework," which "specifically allows for district court jurisdiction over certain actions" demonstrates that "Congress knew how to allow for district court jurisdiction, yet it chose not to do so when it came to issues" such as the predicate of finding a violation of the NGA—here whether the Pipeline is properly considered intrastate or interstate. (Dkt. 38, at 17) ("The NGA provides federal district court jurisdiction only in limited circumstances.") (citing to § 717f(h) (eminent domain), § 717m(d) (subpoena enforcement), § 717s(a) (FERC action for injunction), § 717u (federal court jurisdiction)); *Berkley v. Mountain Valley Pipeline, LLC*, 896 F.3d 624, 629–30 (4th Cir. 2018). Having reviewed the NGA's "language, structure, and purpose," the Court finds that the "NGA provides clear and comprehensive guidance for conducting agency hearings and providing appellate review." *Thunder Basin*, 510 U.S. at 207; *Total Gas*, 2016 WL 3855865, at *15 (citing See NGA §§ 15, 16, 19, 15 U.S.C. §§ 717n, 717o, 717r.). This factor thus weighs against district court jurisdiction over this matter.

Second, the Court examines whether Plaintiffs' claim is "of the type Congress intended to be reviewed within the statutory structure." *Thunder Basin*, 510 U.S. at 207. Congress is presumed to not have intended to limit jurisdiction if "a finding of preclusion could foreclose all meaningful judicial review"; if the suit is "'wholly collateral' to a statute's review provisions"; and if the claim is "outside

the agency's expertise." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010). Courts generally consider the first factor—"meaningful judicial review"—to be the "most important." *Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174, 183 (4th Cir. 2016) (collecting cases). Here, the parties hotly contest whether the FERC's review process allows for meaningful judicial review.

Despite 15 U.S.C. § 717l's designation that only "States, municipalities, and state commissions" may bring a complaint before the FERC, Defendants argue that Rule 206 of FERC's regulations also allow "any person" to file a complaint for violations of the NGA and that, in any event, "FERC has for decades routinely heard Rule 206 complaints by individual parties alleging NGA violations." (Dkt. 38, at 7; Reply, Dkt. 41, at 2 n.1) (collecting FERC cases). Plaintiffs respond that under the NGA's statutory scheme, they "do not have the right to go to FERC with a complaint about the status of the Pipeline under the Natural Gas Act" because Congress "specifically limited FERC's jurisdiction to complaints from 'States, municipalities, and state commissions.'" (Resp., Dkt. 40, at 12) (citing 15 U.S.C. § 717l). Plaintiffs contend that Rule 206 "governs FERC proceedings under numerous statutes, except under the NGA" because the regulations contemplate that the use of the term "person" may be limited by the "governing enabling legislation." (Dkt. 40, at 12). Plaintiffs emphasize that, regardless of the Rule's purported modification of who may bring a complaint before the FERC, an agency "may not create a right that Congress has not." (Dkt. 40, at 13) (citing *Alexander v. Sandoval*, 532 U.S. 275, 291 (2005)).

Generally, when the wording of a regulation is contrary to the wording of the underlying statute, courts must follow the plain statutory language and not the regulations. *Salinas v. Rodriguez*, 963 F.2d 791, 793 (5th Cir. 1992) (citing *Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels. Auth.*, 464 U.S. 89, 97–98, 195 (1983). However, while "regulations cannot expand the reach of the underlying statute," a court will ordinarily defer to an agency's interpretation of its

own regulations unless an agency exceeds its statutory authority or inconsistently construes a statute. *Leber v. Pennsylvania Dep't of Env't Res.*, 780 F.2d 372, 377–78 (3d Cir. 1986). Under Sections 14(a) and 16 of the NGA,[1] the FERC has "broad authority" to "make such orders, rules and regulations as may be necessary to carry out the provisions of the NGA.*" Total Gas,* 2016 WL 3855865, at *14; *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 633 F. Supp. 2d 1151, 1165 (D. Nev. 2007). Section 16 of the NGA, in particular, specifically states that FERC "may classify persons and matters within its jurisdiction and prescribe different requirements for different classes of persons or matters." 15 U.S.C.A. § 717o (West).

Given that the FERC's "broad responsibilities . . . demand a generous construction of its statutory authority" to promulgate rules to investigate and hear complaints of alleged NGA violations, this Court will defer to FERC's regulations and history of allowing complaints by individual parties alleging NGA violations. (Dkt. 41, at 2 n.1) (collecting complaints); *Total Gas*, 2016 WL 3855865, at *14 (S.D. Tex. July 15, 2016) (finding "congressional intent that FERC administer the entire process for assessment of civil penalties, including the predicate of finding a violation of the NGA"). The Court finds that Plaintiffs may file a complaint with FERC seeking a predicate finding that the Pipeline provides an interstate service, and is thus subject to the NGA. As such, this factor weighs against the exercise of jurisdiction, since here "a finding of preclusion" does not "foreclose all meaningful judicial review." *Free Enter. Fund*, 561 U.S. at 489.

Next, the Court must consider whether Plaintiffs' claim is "wholly collateral" to a statute's review provisions." *Id.* Defendants argue that this factor weighs against this Court's exercise of

---

[1] Section 14(a) of the NGA (15 U.S.C. § 717m(a)) provides: "The Commission may investigate any facts, conditions, practices, or matters which it may find necessary or proper in order to determine whether any person has violated or is about to violate any provisions of this chapter or any rule, regulation, or order thereunder." Section 16 of the NGA (15 U.S.C. § 717o) provides: "The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules and regulations as it may find necessary or appropriate to carry out the provisions of this chapter."

jurisdiction because Plaintiffs' claim "boils down to a challenge that the Pipeline is an interstate pipeline subject to NGA Section 7" and the FERC "has established a clear mechanism for processing complaints concerning potential violations of Section 7." (Dkt. 38, at 19). Plaintiffs respond that the Court nonetheless retains jurisdiction over their constitutional claim because "[section] 1983 is exactly the type of federal law that creates a cause of action to enforce the NGA's provisions." (Dkt. 40, at 11).

While Plaintiffs are correct that "courts do not lightly hold that a statutory scheme is comprehensive enough to supplant a [section] 1983 claim," here Plaintiffs' constitutional claim is "not wholly collateral to the statutory review scheme" because it challenges Defendants' failure to obtain a Certificate from the FERC under Section 7 of the NGA. (Dkt. 40, at 14–15; Am. Compl., Dkt. 37, at 27–28); *See Berkley v. Mountain Valley Pipeline, LLC*, 896 F.3d 624, 632 (4th Cir. 2018). A determination by the FERC as to whether the Pipeline is properly considered interstate or intrastate, "the predicate of finding a violation of the NGA," may moot Plaintiffs' claim entirely and "warrants the requirement that [they] pursue adjudication, not shortcut it." *Jarkesy v. S.E.C.*, 803 F.3d 9, 27 (D.C. Cir. 2015) (citing *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 244 n.11 (1980)); *Berkley*, 896 F.3d at 632 (noting that one of the "principal reasons" to defer to agency review is to "obviate all occasion for judicial review"). Therefore, Plaintiffs' claim is not wholly collateral to the NGA's administrative review scheme and this factor disfavors the exercise of jurisdiction by this Court.

Lastly, the Court examines if Plaintiffs' claim is "outside the agency's expertise." *Free Enter. Fund*, 561 U.S. at 489. Defendants posit that the determination as to whether the Pipeline is subject to the NGA "fall[s] squarely within FERC's expertise." (Dkt. 38, at 19). Plaintiffs "agree that this issue is not 'outside of' FERC's expertise," yet argues that this factor alone does not indicate that Congress intended to preclude district court jurisdiction. (Dkt. 40, at 14). Given that the previous factors weigh against this Court's exercise of jurisdiction, the Court need not rely on this factor

alone in reaching its conclusion that it does not have subject matter jurisdiction over Plaintiffs' claim. As the court noted in *Total Gas*, "NGA regulates in a highly complex business arena" and the FERC "is in the best position to weigh competing interests and address contested factual matters." *Total Gas & Power*, 2016 WL 3855865, at *21. Here, the FERC "could bring its expertise to bear" by resolving the preliminary question of whether the Pipeline is subject to the NGA, potentially "disposing of the case before reaching the constitutional question." *Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174, 188 (4th Cir. 2016); *Associated Gas Distributors v. F.E.R.C.*, 899 F.2d 1250, 1264 (D.C. Cir. 1990) ("[T]he task of interpreting § 311 is primarily the FERC's."). This factor thus similarly weighs against the exercise of jurisdiction.

In sum, based on the two-step analysis set out in *Thunder Bird*, the Court finds that Congress intended to divest district courts of jurisdiction to hear the claim pursued by Plaintiffs and instead intended that claim to be brought under the statutory review scheme established by the NGA. The Court thus lacks subject matter jurisdiction over Plaintiffs' claim, and it must be dismissed. Because the Court dismisses Plaintiffs' claim under Rule 12(b)(1), it need not address Defendants' arguments under Rule 12(b)(6).

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 38), is **GRANTED**. Plaintiffs' amended complaint, (Dkt. 37), is **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** on March 5, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE